*331 OPINION OF THE COURT
HARDIMAN, Circuit Judge.
Steven Monaco appeals a judgment of the District Court denying his motion for a new trial and his second motion to amend complaint. Largely for the reasons explained by the District Court and Magistrate Judge in their cogent opinions, we will affirm.
I.
Because we write for the parties, who are familiar with the facts and procedural history, we recount only those aspects of the case that are essential to our decision.
On May 31, 2002, Monaco was tailgating in the parking lot near the Tweeter Center in Camden, New Jersey prior to a concert when a fight broke out. Monaco alleged that during law enforcement’s response to that fight, he was assaulted by Camden police officers who mistook him for a combatant. According to Monaco, he was taken to the police station where he was questioned by another officer, Shay Sampson, who coerced him into confessing to a public drinking violation.
On May 25, 2004, one week before the expiration of the two-year statute of limitations, Monaco filed suit in the District Court, alleging constitutional and state law claims against the City of Camden, the Camden Police Department, and unnamed John Does. Monaco added Officer Sampson as a Defendant in his first amended complaint.
The case went to trial in June 2008 with the jury finding in Monaco’s favor. The victory was Pyrrhic, however, because although the jury found “that one or more Camden Police Officers deprived [Monaco] of the right to be free from excessive force” and “the right to be free from unlawful arrest,” it also found that Monaco did not prove that the City of Camden had an official custom of deliberate indifference that caused the constitutional violations. Furthermore, the jury found that Monaco did not “prove that Defendant Sampson is liable for malicious prosecution.” Monaco filed a motion for new trial, which the District Court denied.
In this appeal, Monaco challenges both the denial of his motion for new trial as well as the denial of his second motion to amend complaint. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.
II.
A.
Monaco contends that the jury’s finding that the police lacked probable cause to arrest him is inconsistent as a matter of law with its finding that Officer Sampson is not liable for malicious prosecution because lack of probable cause is an element of a malicious prosecution claim.
We review the District Court’s denial of a motion for new trial for abuse of discretion. Thabault v. Chait, 541 F.3d 512, 532 (3d Cir.2008) (citation omitted). A district court may grant a motion for new trial “after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.” Fed. R.Civ.P. 59(a)(1)(A). Inconsistent general verdicts may constitute grounds for ordering a new trial. Mosley v. Wilson, 102 F.3d 85, 91 (3d Cir.1996). However, a court may order a new trial based on inconsistent verdicts only if “no rational jury could have brought back the verdicts that were returned.” Pearson v. Welbom, 471 F.3d 732 (7th Cir.2006) (internal quotations and citations omitted). Accordingly, when one party challenges a jury’s verdicts as inconsistent, the court has an obligation first to “attempt to reconcile the jury’s findings” to determine “whether the jury could have, consistent with its instructions, rendered the challenged verdicts.” Davignon v. Hodgson, 524 F.3d 91, 109 *332 (1st Cir.2008) (citations omitted); see Gallick v. Baltimore & O.R. Co., 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963) (“[I]t is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: ‘Where there is a view of the case that makes the jury’s answers to special interrogatories consistent, they must be resolved that way.’ ”) (quoting Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962)). In undertaking to read the verdicts consistently, the court must “view the facts in the light most favorable to the verdict.” Davignon, 524 F.3d at 109.
Applying these standards to this appeal, we have little difficulty finding that the jury’s verdicts regarding unlawful arrest and malicious prosecution were not inconsistent. Monaco is correct that lack of probable cause is an element of both an unlawful arrest claim and a malicious prosecution claim. See, e.g., Paff v. Kaltenbach, 204 F.3d 425, 435 (3d Cir.2000) (unlawful arrest); Brunson v. Affinity Federal Credit Union, 199 N.J. 381, 972 A.2d 1112, 1119 (2009) (malicious prosecution). Nevertheless, the jury’s finding that the officers who took custody of Monaco at the Tweeter Center lacked probable cause to arrest does not preclude a finding that Officer Sampson was not liable for malicious prosecution. See Pearson, 471 F.3d at 739 (verdicts finding two of five defendants liable for retaliation were not inconsistent where jury could have believed that two defendants’ actions constituted retaliation while simultaneously finding that other defendants were not involved in retaliatory act). As explained by the District Court, when the facts are viewed in the light most favorable to the verdicts, there are at least two explanations that would render these jury verdicts consistent.
First, the jury could have found that even though the officers who took Monaco into custody at the Tweeter Center lacked probable cause to arrest, Officer Sampson did have probable cause to believe Monaco had been drinking in public at the time Sampson issued the citation. The jury could have credited Sampson’s testimony that he had not been present during Monaco’s arrest and that Sampson first encountered Monaco at the police station. Monaco, Sampson, and Monaco’s then-girlfriend, Nicole Doran-Pangborne, all testified that Monaco told Sampson that he had consumed an alcoholic beverage before the concert. Doran-Pangborne also testified that Monaco had been drinking alcohol at the parking lot.[1] Monaco contends that a finding of probable cause could not be based upon his confession because it was coerced.[2] But the evidence regarding coercion at trial was disputed: Monaco’s *333 allegation versus Sampson’s denial. The jury was entitled to disbelieve Monaco’s allegations of coercion, and credit Sampson’s testimony that Monaco confessed freely in response to Sampson’s questions.
Based on Monaco’s admission to Sampson that he had consumed alcohol while tailgating before the concert, the jury reasonably could have found that Sampson had probable cause to believe Monaco had been drinking in public when he issued the citation. This is certainly a “minimally plausible view of the case” which renders the jury’s false arrest and malicious prosecution verdicts consistent. See McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 764 (3d Cir.1990).
A second explanation plausibly reconciles the jury’s verdicts. In addition to a lack of probable cause, liability for malicious prosecution requires a showing of malice. See Brunson, 972 A.2d at 1119-20. The jury here could have found that Monaco failed to prove that Officer Sampson acted maliciously, i.e., “without just cause or excuse.” Id. at 1120. The jury was free to disbelieve Monaco’s testimony that Sampson threatened him into making a false confession, credit Sampson’s testimony that he did not threaten Monaco, and conclude that Monaco failed to establish the malice element of his claim. Viewing the testimony before the jury in the light most favorable to the verdicts, we cannot conclude that “no rational jury could have brought back the verdicts that were returned.” Pearson, 471 F.3d at 739.
B.
The remainder of the issues Monaco raises concern the denial of his second motion to amend complaint. Because we find that Monaco’s second motion to amend was untimely and therefore futile, we do not specifically address his allegations of error in the District Court’s denials of his appeal from the Magistrate Judge’s order and his motion to reconsider that denial.
Leave to amend pleadings “shall be freely given when justice so requires.” Fed. R.CivJP. 15(a). As articulated by the Supreme Court:
In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.the leave sought should, as the rules require, be “freely given.”
Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Because Monaco sought to amend his complaint for a second time approximately two years after the statute of limitations expired, his motion is futile unless it relates back to the date of the original complaint.[3] See Fed. *334 R.Civ.P. 15(c)(1). Whether Monaco’s amendment relates back to the original pleading is determined by the law that provides the applicable statute of limitations, see id., in this case, New Jersey. Two New Jersey rules are relevant to Monaco’s motion, N.J. Court Rules 4:26-4 and 4:9-3, but Monaco failed to satisfy the requirements of either rule.
Rule 4:26-4, New Jersey’s fictitious party rule, permits a plaintiff to sue a defendant under a fictitious name when the defendant’s true name is unknown. The plaintiff may use the fictitious party rule to add defendants after the expiration of the statute of limitations “only if the plaintiff exercised due diligence to ascertain defendant’s true name before and after filing the complaint.” DeRienzo v. Harvard. Indus., Inc., 357 F.3d 348, 353 (3d Cir.2004) (citation omitted) (emphasis added). “In the context of N.J.R. 4:26-4, plaintiffs must ‘investigate all potentially responsible parties in a timely manner’ to cross the threshold for due diligence.” Id. at 354 (quoting Matynska v. Fried, 175 N.J. 51, 811 A.2d 456, 457 (2002)).
Monaco has not presented adequate evidence of efforts taken before the expiration of the statute of limitations to satisfy the diligence requirement. Monaco alleges that his efforts were thwarted because, in response to the discovery requests he made in defending the public drinking charges in municipal court, the City stated that it was “unable to locate any report” relevant to the charge. Monaco fails to show why the City’s inability to locate any reports prevented him or his eyewitnesses from reviewing the police photo book to identify potential defendants during the two years before he filed suit. The City’s inability to locate a report at that time, while troubling, does not excuse Monaco from his diligence obligations. Accordingly, he cannot avail himself of Rule 4:26-4 to avoid the statute of limitations bar to his second motion to amend.[4]
Rule 4:9-3, New Jersey’s general relation back rule, provides that an amendment changing the party against whom a claim is asserted relates back to the date of the original complaint if: (1) it arose out of the same transaction or occurrence set forth in the original pleading; (2) the proposed defendant received notice of the institution of the action within the limitations period such that the party will not be prejudiced in maintaining a defense; and (3) the proposed defendant knew or should have known that, but for the misidentification of the proper party, the action would have been brought against him or her. Arroyo v. Pleasant Garden Apartments, 14 F.Supp.2d 696, 701 (D.N.J.1998) (citing Viviano v. CBS, Inc., 101 N.J. 538, 503 A.2d 296, 304 (1986)). In this case, Monaco has not met his burden with respect to the second or third prongs of the test.
Monaco argues that the proposed defendants had notice of the lawsuit and knowledge that they were potential defendants because: (1) in an interview with the media shortly after the incident, a member of the Camden Police Department stated that the incident would be investigated internally, (2) the proposed defendants are Camden Police officers and the City of Camden was named a defendant in the original complaint, and (3) in their answer to the amended complaint, the City acknowledged that there was another lawsuit *335 pending regarding the May 31, 2002 incident. We disagree for several reasons.
First, the media statement regarding an internal investigation could not have notified the proposed defendants of Monaco’s lawsuit since it was made almost two years prior to the initiation of the lawsuit. Additionally, the investigation itself was not conducted by the Camden City Police Department until February of 2005, over seven months after the expiration of the statute of limitations; therefore, the investigation could not have put the proposed defendants on notice of the lawsuit before the expiration of the limitations period.
Second, while in some circumstances, the “identity of interest” method permits imputing notice of an action to an unnamed party, see Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 198 (3d Cir.2001), Monaco has not shown that the proposed defendants and the City of Camden share such an identity of interest. See Otchy v. City of Elizabeth Bd. of Educ., 325 N.J.Super. 98, 737 A.2d 1151, 1157 (N.J.Super.A.D.1999). Also, Monaco filed his original lawsuit only six days before the statute of limitations expired and did not serve the City until June 14, 2004; therefore, we cannot conclude that the City would have had time to identify and notify the proposed defendants of the action before the statute of limitations ran. See Love v. Rancocas Hosp., 270 F.Supp.2d 576, 581 (D.N.J.2003) (holding that where employer and some employees were served just days before limitations period expired, they did not have sufficient time to determine that named employees were identified incorrectly and notify correct employee of the action).
Finally, the mere existence of a related lawsuit was insufficient to put the proposed defendants on notice of Monaco’s lawsuit, or that they might be defendants in the ease. Even if additional lawsuits over the May 31, 2002 incident alerted the proposed defendants to the existence of potential claims, it would not have alerted them to the institution of Monaco’s lawsuit. See Otchy, 737 A.2d at 1156 (“The rule expressly requires ‘notice of the institution of the action’ not just of a claim. The purpose of that notice provision in the rule is to assure that the added party will not be prejudiced by having to defend a stale claim.”). Therefore, Monaco has not satisfied the requirements for relation-back under Rule 4:9-3.
III.
For the foregoing reasons, we conclude that the verdicts were not inconsistent and that Monaco’s second motion to amend complaint was untimely and properly denied as futile. Accordingly, we will affirm the judgment of the District Court.

. The inconsistency of the testimony regarding which alcoholic beverage Monaco was drinking — Monaco and Sampson testified he confessed to drinking a Coors Light while Doran-Pangborne said it was a Mike's Hard Lemonade — is immaterial because either beverage could subject him to the charge of public drinking.

. Monaco argues that the evidence of his confession should have been excluded as "fruit of the poisonous tree,” because it was obtained subsequent to his illegal arrest. This argument is without merit as it confuses the principles of civil and criminal proceedings. The fruit of the poisonous tree doctrine cannot be invoked to support a civil claim for damages because "the doctrine is an evidentiary rule that operates in the context of criminal procedure and has generally been held to apply only in criminal trials.” Jenkins v. City of New York, 478 F.3d 76, 91 n. 16 (2d Cir.2007) (internal quotation and citations omitted); United States v. Calandra, 414 U.S. 338 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (instructing that "standing to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlawful search”).

. Monaco argues that the City should be es-topped from asserting the statute of limitations because it did not oppose his first motion to amend, which also was filed after the statute of limitations expired. We reject this argument as the City’s assertion of the statute of limitations in opposition to the second motion to amend is not inconsistent with its failure to object to the first motion to amend, and because it would not have been reasonable for Monaco to delay filing his second motion to amend in reliance on the failure to object. See generally Knorr v. Smeal, 178 N.J. 169, 836 A.2d 794, 799 (2003) ("The doctrine [of equitable estoppel] is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment.’’). Furthermore, we note that after Monaco filed his first amended complaint in March 2005, all of the newly added defendants — save Officer Sampson — successfully moved for summary judgment on the ground that the claims were barred by the statute of limitations. Monaco did not appeal that ruling.

. Monaco’s argument that he could not return to the police station to review the photo book prior to the running of the two-year statute of limitations because of the intimidation he suffered on May 31, 2002 is not persuasive. Monaco cites no authority for this proposition, and even if he were fearful of the Camden police, there is no reason Monaco and his lawyer could not have arranged to review the photo book at another location.